[Cite as *State v. Allen*, 2013-Ohio-1656.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98394**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# SHARONIKA ALLEN

DEFENDANT-APPELLANT

## JUDGMENT:
VACATED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548831

**BEFORE:** E.A. Gallagher, J., Jones, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** April 25, 2013

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
State Public Defender

By:   Peter B. Galyardt
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, OH 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Mary H. McGrath
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

EILEEN A. GALLAGHER, J.:

**{¶1}** Appellant, Sharonika Allen ("Allen"), appeals from her conviction and sentence in the Cuyahoga County Court of Common Pleas. Allen argues the trial court erred when it rejected the proffered plea agreement and when it imposed restitution to a third-party insurer. For the following reasons, we reverse the decision of the trial court and remand for proceedings consistent with this opinion.

**{¶2}** On August 29, 2010, Ajoy Gill received a call from her brother, Floy Gill, asking her to pick him up from the home of his girlfriend, Sharonika Allen. Ajoy arrived at Allen's apartment building and heard Floy and Allen arguing and saw that Floy was having difficulty leaving Allen's residence. Ajoy called police, exited her vehicle, and approached Floy and Allen.

**{¶3}** Ajoy testified that although she and Allen did not know each other, they got into a verbal altercation that became physical. Ajoy admitted that she and Allen began throwing punches at each other and stopped only when police arrived. Ajoy stated that the police separated her and Allen and then instructed Ajoy and Floy to leave. Ajoy testified that she drove her brother to her house in the area of West 52nd and Clark Avenue in Cleveland. Ajoy stated that when she and Floy got out of her vehicle, they saw Allen approaching in her car. Allen exited her vehicle and began yelling at Ajoy who immediately called the police. Ajoy testified that she was on the phone with

the police department when Allen jumped into her car and drove it up onto the lawn. Ajoy stated that Allen drove her car straight towards her, hitting her, forcing her onto the car and crashing both herself and the vehicle into the front porch of Ajoy's house.

{¶4} Police responded and photographed the damage to Ajoy's residence and transported Ajoy to the hospital for treatment. The officers placed Allen under arrest.

{¶5} On April 12, 2011, the Cuyahoga County Grand Jury indicted Allen charging her with three counts of felonious assault and one count of vandalism. Prior to the start of trial, the state of Ohio offered Allen a plea agreement: the state agreed to amend Count 1, felonious assault, to attempted felonious assault, a third-degree felony. In exchange for pleading guilty to the amended charge, the state agreed to dismiss the remaining three counts. Allen rejected the state's offer. The state renewed its offer prior to selecting a jury and Allen again rejected the plea agreement. At that time, the court warned Allen that "once the jury comes on the floor there is no more plea negotiation." Tr. 8.

{¶6} The parties selected a jury and, prior to commencement of trial, the state dismissed the felonious assault as charged in Count 2. Additionally, counsel for Allen and the state had a discussion on the record outside of the presence of the jury and the court. At that time, the state admitted that it possessed recorded 911 calls from the date of the incident that it was only then able to turn over to the defense after the court impaneled the jury. After hearing the tapes, Allen indicated her desire to accept the

plea agreement that had been proposed by the state prior to trial. Because of the unique circumstances, the state agreed to extend the plea offer to Allen. Counsel for the state and Allen informed the court of their agreement but, according to counsel, the court would "not allow the defendant to change her plea now that a jury has been impaneled." Tr. 113.

{¶7} Allen failed to appear on the second day of trial and the court issued a capias and a bond forfeiture notice. The court proceeded with the trial over defense counsel's objection. The jury found Allen guilty of felonious assault as charged in Count 1, not guilty of felonious assault as charged in Count 3 (renumbered to Count 2), and guilty of vandalism as charged in Count 4 (renumbered Count 3).

{¶8} On March 30, 2012, Allen was arrested and returned to the court's custody. On April 26, 2012, the court sentenced Allen to two years on Count 1 and six months on Count 4 (renumbered Count 3) to run concurrent to one another. The court informed Allen of postrelease control and ordered her to pay $9,641.13 to Mutual Aid Exchange, a third-party insurer. Allen appeals, raising three assignments of error.

Assignment of Error I

The trial court abused its discretion when it rejected the plea agreement.

Assignment of Error II

The trial court committed plain error when it ordered that restitution be paid to a third-party insurer.

Assignment of Error III

Sharonika D. Allen was deprived of her right to the effective assistance of

counsel.

{¶9} In her first assignment of error, Allen takes issue with the trial court's adherence to its blanket rule that no plea negotiations would be accepted once it impaneled a jury. In particular, Allen argues that the extenuating circumstances of not hearing the 911 recorded calls until after the court impaneled the jury, coupled with the state's willingness to keep the plea offer open, demonstrate that the trial court abused its discretion in failing to allow her to accept the plea agreement. We agree.

{¶10} In *State v. Fitzgerald*, 188 Ohio App.3d 701, 2010-Ohio-3721, 936 N.E.2d 585 (8th Dist.), and *State v. Switzer*, 8th Dist. No. 93533, 2010-Ohio-2473, this court considered similar policies that are at issue herein. In *Switzer,* this court held:

> A trial court * * * abuses its discretion when it rejects a plea agreement by relying on a blanket policy rather than considering the facts and circumstances of the particular case. *State v. Raymond*, 10th Dist. No. 05AP-1043, 2006-Ohio-3259, at P15; *State v. Graves* (Nov. 19, 1998), 10th Dist. No. 98AP-272, 1998 Ohio App. LEXIS 5608 (finding an abuse of discretion after trial court refused the defendant's plea based upon its blanket policy of not accepting no contest pleas); *State v. Hunt* (Oct. 22, 1985), 4th Dist. No. 1536, 1985 Ohio App. LEXIS 8937 (finding abuse of discretion when the trial court refused to accept a plea agreement because it had a policy of rejecting agreements after jury cards were mailed to prospective jurors in a case). *See, also, United States v. Miller* (C.A.9, 1983), 722 F.2d 562, 565 (finding categorical rules limiting the type of plea bargains a court can accept impermissible).

> In *State v. Raymond*, supra, the trial court rejected a plea agreement reached by the state and the defendant due to its "blanket policy of not accepting 'pleas from people that don't think they did anything wrong.'" *Id*. at P11. In finding that the trial court abused its discretion in employing its overarching policy rather than examining the particular circumstances of the case, the Tenth District reasoned the following:

> Under those circumstances, the trial court's refusal to accept appellant's

plea was an abuse of discretion, or more precisely, it was a refusal to exercise the court's discretion. The trial court arbitrarily refused to consider the facts and circumstances presented, "but instead relied on a fixed policy established at its whim." *State v. Graves* (Nov. 19, 1998), 10th Dist. No. 98AP-272, 1998 Ohio App. LEXIS 5608, * * * quoting [State v.] Carter [(1997), 124 Ohio App.3d 423, 428, 706 N.E.2d 409]. The *Graves* court held, "[a]lthough the trial court has the discretion to refuse to accept a no-contest plea, it must exercise its discretion based on the facts and circumstances before it, not on a blanket policy that affects all defendants regardless of their circumstances." *Graves, supra*, at 10. *Id.*

{¶11} In *Switzer,* the trial court refused to accept the plea agreement reached by the state and the appellant based on its policy of not accepting plea agreements on the day of trial. This court determined that under those circumstances, a trial court abuses its discretion when it employs a blanket policy rather than examining the particular facts and circumstances of the case. This court reversed the decision of the trial court.

{¶12} Additionally, in *Fitzgerald*, the record demonstrated that defense counsel informed the trial court of the impending plea agreement immediately after obtaining discovery. The trial court determined that the plea was untimely under the terms of the court's standing order because a trial date had been established. *Id.* Once again, this court determined that the trial court abused its discretion because it employed a blanket policy rather than examining the facts and circumstances of the particular case. *Id.*

{¶13} We find *Switzer* and *Fitzgerald* to be remarkably similar to the present case. Here, the court announced its intention that no plea negotiations would take place once the jury was impaneled. The state and defense counsel informed the court that after hearing the 911 recorded calls, which were provided to Allen for the first time after the jury was impaneled, the parties wanted to enter into a plea agreement. The court

refused. Under these circumstances, like *Switzer* and *Fitzgerald*, the trial court abused its discretion when it adhered to its blanket policy rather than examining the facts and circumstances of this case.

{¶14} The recorded 911 calls constituted significant evidence, which was only made available to Allen at the start of trial. Prior to that point, Allen did not have sufficient information to make a knowing and voluntary decision regarding a guilty plea. The court's refusal to consider these facts was an abuse of discretion.

{¶15} Allen's first assignment of error is sustained.

{¶16} In her second assignment of error, Allen asserts that the trial court erred when it ordered her to pay restitution to Mutual Aid Exchange, a third-party insurer. The state concedes this error. We agree.

{¶17} R.C. 2929.18(A)(1) provides that a trial court may order that a defendant pay restitution to a victim in the amount of the victim's economic loss. "If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court." R.C. 2929.18(A)(1).

{¶18} In 2004, the General Assembly amended the former version of R.C. 2929.18(A)(1) to remove language that allowed a trial court to order that restitution be paid to a third party on behalf of the victim. *See State v. Berlinger*, 194 Ohio App.3d 145, 2011-Ohio-2223, 954 N.E.2d 1290 (1st Dist.); *State v. Johnson*, 1st Dist. No.

C-100702, 2011-Ohio-5913. "Given this deletion, the legislature's intent to disallow payment to victims' insurance companies is clear." *Johnson* at ¶ 5. *See also State v. Colon*, 185 Ohio App.3d 671, 2010-Ohio-492, 925 N.E.2d 212 (2d Dist.). The state concedes that the trial court erred when it ordered that restitution be paid to Mutual Aid Exchange. Allen's second assignment of error is sustained.

{¶19} Our analysis of Allen's second assignment of error renders her third assignment of error moot. We previously found error with the trial court's order of restitution and, as such, we render this assignment of error moot.

{¶20} The judgment of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
MARY EILEEN KILBANE, J., CONCUR