[Cite as *State v. Stover*, 2014-Ohio-2572.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

MICHAEL EDWIN STOVER

    Appellant

C.A. No.    13CA0035

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    CRB-12-12-01880

DECISION AND JOURNAL ENTRY

Dated: June 16, 2014

WHITMORE, Judge.

{¶1} Appellant, Michael Stover, appeals from his convictions in the Wayne County Municipal Court. This Court affirms in part and reverses in part.

I

{¶2} On December 26, 2012, Stover and his live-in girlfriend, Suzanne Johnson, got into an argument, and Johnson decided to go to her sister's apartment. At her sister's, Johnson became intoxicated and called an ex-boyfriend, Phillip Adkins. At Johnson's request, Phillip and his daughter, Darrian, went over to the apartment to pick Johnson up. At some point before Phillip and Darrian arrived, Johnson called Stover and asked him to come and take her home.

{¶3} Phillip and Darrian were inside the apartment when Stover arrived. A couple of other men went outside to tell Stover that he was not welcome inside the apartment. A fight ensued. Johnson went to the front door to see what was going on and testified that she got pushed out of the apartment and ended up at the bottom of a pile of people. Stover was on top of

Johnson, and several men were on top of Stover. Jennifer, Johnson's sister, then tried to break up the fight. In the fracas, Stover was bitten by Jennifer's dog. At some point, Stover was able to extricate himself from the pile and then, according to Phillip and Darrian, he attacked Phillip's jeep. Phillip and Darrian testified that Stover kicked the driver's side of the jeep, then got inside and started punching the dashboard. Phillip stated that he pulled Stover out of the jeep and Stover took off running. Phillip called the police.

{¶4} Officers Nathan Maimone and Cory Seiler responded to the scene. Witnesses informed Officer Seiler that Stover had fled on foot. Officers apprehended Stover approximately two blocks from the scene, after following his footprints in the snow. Stover was charged with: (1) domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree; (2) assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree; (3) criminal damaging in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree; and (4) disorderly conduct in violation of R.C. 2917.11(A)(1), a minor misdemeanor. Stover was convicted on all counts after a bench trial. Stover now appeals and raises four assignments of error for our review. To facilitate the analysis, we address his first two assignments of error together.

II

Assignment of Error Number One

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO INTRODUCE HEARSAY EVIDENCE TO ESTABLISH THE ELEMENTS OF THE OFFENSES OF DOMESTIC VIOLENCE, ASSAULT AND DISORDERLY CONDUCT.

Assignment of Error Number Two

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO IMPEACH ITS OWN WITNESS ABSENT ANY SHOWING OF SURPRISE AND AFFIRMATIVE DAMAGE.

{¶5} In his first assignment of error, Stover argues that the court erred in allowing hearsay evidence to be admitted at his trial. In his second assignment of error, Stover argues that the court erred in allowing the State to impeach its own witness without establishing surprise and affirmative damage.

{¶6} Hearsay is an out of court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is not admissible unless provided for by constitution, statue, or rule. Evid.R. 802. Evid.R. 607(A) prohibits a party from impeaching its own witness with a prior inconsistent statement, unless the party shows surprise and affirmative damage or the prior statement is admissible under one of the enumerated exceptions to the hearsay rule.

{¶7} The decision to admit or exclude evidence at trial lies within the sound discretion of the trial judge, and the court's decision will not be reversed absent a showing of an abuse of discretion. *O'Brien v. Angley*, 63 Ohio St.2d 159, 163 (1980). A trial court's decision to allow a party to impeach its own witness is also reviewed under an abuse of discretion standard. *State v. Taylor*, 9th Dist. Lorain No. 01CA007945, 2002-Ohio-6992, ¶ 7. An abuse of discretion indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8} At trial, the State called Johnson as its first witness. Johnson testified that, on December 26, 2012, she had gone to her sister's apartment after having an argument with Stover. She admitted that she had been drinking and testified that while at her sister's things "got really blurry." Johnson remembered calling her ex-boyfriend, Phillip, and his daughter and asking them to come pick her up. She also remembered calling Stover and asking him to come pick her up. Johnson testified that, sometime after Phillip and Darrian arrived, everyone in the apartment started going outside so she went to the front door to see what was happening. The next thing

she knew, she was pushed out of the front door, landed on the ground, "and somehow ended up at the bottom of the pile."

{¶9} The State then asked if Johnson remembered speaking to police officers that evening. Johnson stated that she did remember talking to Officer Seiler, but did not remember giving a verbal statement that he wrote down for her. However, Johnson acknowledged that the signature at the end of the written statement was hers. When the State asked Johnson to read the written statement aloud, defense counsel objected, arguing that the prior statement was inadmissible hearsay. The State responded that it was not hearsay because it was her own statement. The court concluded that the statement was admissible to prove the truth of the matter asserted because the declarant, regardless of whether that was Johnson or Officer Seiler, was presently available and could be cross-examined.

{¶10} Hearsay is not admissible as substantive evidence simply because the declarant is available to be cross-examined on the prior statement. *See State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 183. Evid.R. 801(D)(1) provides that a prior statement is not hearsay if:

> [t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is [ ] inconsistent with the declarant's testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition[.]

Assuming the written statement transcribed by Officer Seiler was attributable to Johnson, it was not made under oath and was not subject to cross-examination at the time it was made. Because the written statement is an out of court statement that is being offered for the truth of the matter asserted, it is hearsay and inadmissible unless an exception to the hearsay rule applies. *See* Evid.R. 802.

{¶11} On appeal, the State argues that Johnson's statement was admissible as an excited utterance. Evid.R. 803(2) permits the admission of "[an out of court] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The Ohio Supreme Court has identified four conditions necessary to qualify as an excited utterance. *State v. Wallace*, 37 Ohio St.3d 87, 89 (1988). Those conditions are:

> (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
>
> (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
>
> (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and
>
> (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

(Emphasis sic.) *Id.*, quoting *Potter v. Baker*, 162 Ohio St. 488 (1955), paragraph two of the syllabus.

{¶12} While the amount of time between the startling event and the statement is not dispositive as to whether the statement may be an excited utterance, it is a factor to be considered. The question is whether Johnson made her statement "before there had been time for such nervous excitement to lose a domination over h[er] reflective faculties." *Wallace* at 89. The State, as the party seeking to admit the evidence, had the burden to prove that the statement was made while Johnson was still under the stress of the event. *See State v. Smith*, 9th Dist. Lorain No. 99CA007399, 2000 WL 1675052, *7 (Nov. 8, 2000).

{¶13} It is unclear from the record how much time had lapsed between the incident and when Johnson spoke to Officer Seiler. Johnson's testimony provided no timeline. Officer Seiler testified that he responded to the apartment complex shortly after his shift began at 11:00 p.m. and was the first officer to arrive on scene. He was met by several people who told him that a woman had been assaulted and the assailant had fled on foot. Officer Seiler stated that, after he relayed the information to the other responding officers, he proceeded south on foot to search for the suspect. Officer Seiler said that he was only in pursuit "briefly" before he received information via radio that the suspect had been apprehended. He then headed back to the apartment complex to speak with witnesses.

{¶14} Officer Seiler stated that "[a]s soon as [he] walked in and made contact with [ ] Johnson, she was extremely distraught, [and that] she couldn't really speak with [him] because she was just sobbing hysterically." It is unclear if Officer Seiler spoke to any other witnesses before approaching Johnson. He testified that Johnson's sister, Jennifer, then "pulled [him] aside and told [him] what had happened." The record does not reflect how long he spoke with Jennifer. Officer Seiler said that after he finished talking to Jennifer, he "was able to speak with [Johnson]."

{¶15} Officer Seiler testified that he relocated his interview with Johnson to the front seat of his police cruiser because there were other people around talking, presumably causing a distraction. Officer Seiler then, over the objection of defense counsel, recited what Johnson told him. Officer Seiler testified that Johnson told him that Stover had "lunged at her, picked her up, slammed her down," and "punched her three or four times in the head." Officer Seiler said that Johnson told him that Stover then damaged a car and took off. According to Officer Seiler, Johnson said Stover beat her once a week and that he was going to kill her. At some point,

Officer Seiler asked Johnson if she would provide a written statement. Johnson agreed, but, because she was so intoxicated, her handwriting was illegible. Officer Seiler then offered to write the statement out for her, and, according to Officer Seiler, she agreed.

**{¶16}** Assuming without deciding that the written statement is attributable to Johnson, we cannot conclude that the State has met its burden to establish that the statement was an excited utterance. There is no indication as to the time between the incident and Johnson's statement to Officer Seiler. Moreover, Officer Seiler testified that Johnson was too emotional to talk to him initially so he waited for her to calm down. This fact is inconsistent with the core concept of the admissibility of excited utterances. The fact that the officer waited for Johnson to calm down leads us to conclude that she had time for the nervous excitement of the event to abate, and instead to use her reflective faculties in relaying to the officer what she had observed. Based on the record before us, the State did not carry its burden of establishing the applicability of this exception to the hearsay rule. Because the statement was inadmissible hearsay, the court abused its discretion in allowing the statement to be admitted. *See State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 11-15. Further, for the following reasons, we cannot conclude that the error harmless. *See* Crim.R. 52(A).

**{¶17}** Having concluded that the statement was not an excited utterance, the State could only have used the prior statement to impeach the credibility of Johnson if it established surprise and affirmative damage. *See* Evid.R. 607(A). However, the State did not, and cannot, argue that it was surprised by Johnson's testimony that Stover did not attack her that night. Johnson had sent a letter to the prosecutor's office approximately two weeks after the incident indicating that there was a misunderstanding. In this letter, which was admitted into evidence, Johnson stated that Stover never attacked her, but was instead trying to protect her from the melee. More

importantly, Evid.R. 607(A) is not applicable because the trial court specifically determined that the statement was not being offered to impeach Johnson's credibility. It was being offered to prove the truth of the matter asserted. *See Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, at ¶ 182-185 (distinguishing between statements being used under Evid.R. 801(D)(1)(a) as substantive evidence and those being used under Evid.R. 613(B) to impeach a witness's credibility).

{¶18} The trial was short, producing a transcript of only 112 pages. The testimony from both Johnson and Officer Seiler are overwhelmingly tainted with hearsay. Moreover, at the close of the trial, the court remarked that "[w]e have the statement that was taken from [ ] Johnson at the time of this event and in this statement she said that [Stover] grabbed her and threw her down. That statement is consistent with the two statements that [Phillip][1] made as well as his daughter made." Shortly thereafter, the court found Stover guilty on all of the charges.

{¶19} Under the circumstances presented in this case, we cannot conclude that the court's admission of hearsay evidence was harmless. Stover's first and second assignments of error are sustained. His convictions for domestic violence, assault, and disorderly conduct are reversed.

<u>Assignment of Error Number Three</u>

> THE TRIAL COURT ERRED BY FINDING THE DEFENDANT GUILTY OF DOMESTIC VIOLENCE, ASSAULT, CRIMINAL DAMAGING AND DISORDERLY CONDUCT, WHEN SUCH VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} In his third assignment of error, Stover argues that his convictions are against the manifest weight of the evidence. In light of our resolution of his first two assignments of error,

---

[1] The record does not reflect two statements by Phillip. Presumably, the court was referring to the testimony of Phillip and his daughter as the two statements.

his third assignment of error, as it relates to his convictions for domestic violence, assault, and disorderly conduct, is moot, and we decline to address it. App.R. 12(A)(1)(c). We, therefore, limit our review to his conviction for criminal damaging.

{¶21} A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence, offered in a trial*, to support one side of the issue rather than the other.'" (Emphasis sic.) *Id.* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶22} R.C. 2909.06(A)(1) provides that no person shall knowingly, by any means, "cause[] or create a substantial risk of physical harm to any property of another without the other person's consent[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶23} Phillip testified that he was standing by the front door of the apartment while Stover was fighting with several people. According to Phillip, Stover then attacked Johnson and people piled on top of Stover. After Stover got up from the pile, he ran over to Phillip's jeep and started kicking and punching it, "all the way up the driver['s] side." Phillip testified that Stover then got inside the jeep, where he broke the turn signal and cracked the middle console.

{¶24} Darrian Adkins testified that her father was standing by his jeep when the group was fighting. According to Darrian, Stover got up from the pile, went over to her father's jeep, and started kicking the driver's side. Darrian said Stover then got inside the jeep and started punching the dash.

{¶25} Officer Maimone testified that he observed some damage to the inside of the jeep. He stated that it looked like someone had kicked the driver's side, but that he did not notice any damage to the outside of the car. Photographs of the jeep and an insurance estimate for repairs were admitted into evidence.

{¶26} Stover testified that he "got bounced down the side of Phil[lip]'s [jeep]" by the men who were attacking him. He denied ever intentionally kicking the car and testified that he never got inside. Stover argues that Phillip and Darrian are not credible witnesses because Phillip is Johnson's former boyfriend. Further, Stover argues, their stories are inconsistent. Specifically, Stover points to Phillip's testimony that he was standing by the front door of the apartment when Stover began attacking his jeep. Darrian, on the other hand, testified that Phillip was standing by the jeep when Stover ran over and started kicking it.

{¶27} We cannot conclude that this inconsistency weighs heavily against his conviction. *See Thompkins*, 78 Ohio St.3d at 387. Both Phillip and Darrian testified that Stover kicked the driver's side of the jeep before getting inside and punching the dashboard. Officer Maimone

testified that he observed damage to the inside of the car. "[T]his Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witnesses' testimony over the testimony of others." *State v. Manso*, 9th Dist. Summit No. 26727, 2014-Ohio-1388, ¶ 26, quoting *State v. Brown*, 9th Dist. Wayne No. 11CA0054, 2013-Ohio-2945, ¶ 42.

**{¶28}** Stover's third assignment of error, as it relates to his criminal damaging conviction, is overruled. His third assignment of error, as it relates to his other convictions, is moot.

<u>Assignment of Error Number Four</u>

THE TRIAL COURT ERRED BY SENTENCING THE DEFENDANT TO PAY RESTITUTION TO AN ALLEGED VICTIM'S INSURANCE COMPANY.

**{¶29}** In his fourth assignment of error, Stover argues that the court erred in ordering him to pay restitution to a third party.

**{¶30}** R.C. 2929.18(A)(1) permits the court to order a defendant convicted of a felony to pay restitution based on the amount of the victim's economic loss. "If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court." *Id.*

**{¶31}** The court ordered Stover to pay Phillip $500 for his out of pocket expenses to repair his jeep. Further, the court ordered Stover to pay $2,288.13 to Phillip's insurance company for the remaining cost of repairs. The State concedes that the court erred in ordering Stover pay restitution to Phillip's insurance company. We agree.

**{¶32}** The statute permits the court to order restitution to: (1) the victim, (2) the adult probation department, (3) to the clerk of courts, or (4) to "another agency designated by the

12

court." *Id*. Phillip's insurance company is none of these. *See State v. Allen*, 8th Dist. Cuyahoga No. 98394, 2013-Ohio-1656, ¶ 16-18. Stover's fourth assignment of error is sustained.

III

{¶33} Stover's first two assignments of error are sustained, and his convictions for domestic violence, assault, and disorderly conduct are reversed. His third assignment of error, as it relates to his criminal damaging conviction, is overruled. Stover's third assignment of error, as it relates to his other convictions, is moot. His fourth assignment of error is sustained. The judgment of the Wayne County Municipal Court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

JOHN E. JOHNSON, JR., Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.