[Cite as *State v. Botts*, 2019-Ohio-3801.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-41 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-104 |
| | : | |
| JEFFREY A. BOTTS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of September, 2019.

. . . . . . . . . . .

DAVID M. MORRISON, Atty. Reg. No. 0087487, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 West Monument Avenue, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Appellant, Jeffrey Botts, was convicted following his guilty pleas to aggravated trafficking in drugs and failure to comply. On appeal, he asserts that the trial court abused its discretion when the court refused his attempt to accept the State of Ohio's plea offer on the day of the scheduled jury trial. Based upon the circumstances of the case, we conclude that the trial court did not abuse its discretion by refusing to allow Botts to enter a negotiated guilty plea on the morning of the scheduled jury trial. The trial court's judgment will be affirmed.

### Facts and Procedural History

{¶ 2} Botts was indicted as follows: Count I, failure to comply with an order or signal of a police officer, a third degree felony; Count II, aggravated trafficking in drugs, a first degree felony; and Count III, aggravated possession of drugs, a first degree felony. At some point, the State extended a plea offer to Botts. On the morning of the scheduled jury trial, Botts indicated a desire to accept the State's offer. The trial court, citing its policy not to allow a negotiated plea on the day of a scheduled jury trial, informed Botts that if he desired to enter a guilty plea, he would have to plead as charged in the indictment. The record does not reflect the complete terms of the State's offer, but based upon Botts's comments during his discussion with the trial court, it seems that the offer included either a recommended or stipulated six-year prison term.

{¶ 3} Given the trial court's position, Botts pleaded guilty to the indicted charges. At the sentencing hearing, the trial court merged the drug counts, and the State elected to proceed on the trafficking count (Count II). Count II required the mandatory imposition

of a prison term of three to eleven years; the trial court imposed a four-year prison term for aggravated trafficking. On the failure to comply count (Count I), the trial court imposed a 24-month prison term, and it ordered that the sentences be served consecutively, as required by statute. Thus, the aggregate term was 6 years in prison. Under Count I, the trial court also suspended Botts's Ohio driver's license for 30 years. Because Botts was indigent, the trial court did not impose the mandatory fine for Count II. This appeal followed.

**Analysis**

{¶ 4} Botts's only assignment of error is as follows:

THE TRIAL COURT ERRED IN REJECTING THE PLEA AGREEMENT.

a. The trial court abused its discretion in rejecting the plea agreement based upon a blanket policy.

{¶ 5} The following sets forth the initial interaction between the trial court, Botts, and Botts's trial attorney:

THE COURT: The matter before the Court today is entitled State of Ohio, Plaintiff v. Jeffrey A. Botts, Defendant. It is Case Number 18 CR 104. Would counsel enter their appearance, please?

MR. MORRISON: David Morrison for the State of Ohio, your Honor.

MR. FOGT: Chris Fogt on behalf of Mr. Jeffrey Botts.

THE COURT: The Court's been advised, Counsel wishes to proceed forward with a matter at this point?

MR. FOGT: I do, your Honor. Before we proceed forward, Mr.

Jeffrey Botts indicated this morning that he wished to have new Counsel based on lack of communication between he and I.

There's been some disagreement regarding that. He does not feel that I'm providing adequate counsel or the communication that's necessary.

I believe he would say that - - it's irreparably broken as to the communication aspect is my understanding.

THE COURT: All right. Mr. Botts, did you hear what your attorney just said?

DEFENDANT JEFFREY BOTTS: Yes, I heard what he said.

THE COURT: Did you have anything that you wanted to add to that?

DEFENDANT JEFFREY BOTTS: The communication, I don't know where - - it was either me or him. I tried to take the deal that was offered, and I would prefer to take it today just to be done, and I've got a 14 year old daughter that I'm dying to get home to, trying to meet her graduation.

With everything he had said and done, I misunderstood him. He misunderstood me, and I didn't - - I don't know where to stand here.

I know, like, the representation of the trial, I misunderstood some things. I misunderstood today that I couldn't accept and plead. I tried Friday, but throughout phone course, messages, it was mistrued (sic), and I guess somehow that the, the E-Mail or something didn't get in time.

And as far as taking over the plead, I'd like to just take my six years and just put it all behind me. Get me into some drug programs while I'm there. Let me better myself with some education, and let me get home to

my daughter before she graduates.

THE COURT: Well, it sounds like your communication issues were a last minute thing. It's not like you haven't - -

DEFENDANT JEFFREY BOTTS: No, it's - -

THE COURT: -- been able to communicate to your attorney.

DEFENDANT JEFFREY BOTTS: We, we haven't - - stand up?

MR. FOGT: No, no, I said I understand.

THE COURT: No, no.

DEFENDANT JEFFREY BOTTS: I don't know if it was me not asking the right questions or him not reiterating of where I stand and what the - - I don't even know the words - - the severiority (sic) of the complexity or whatever of my case to where I was thinking maybe I could get a little less time if I waited.

We didn't know last minute coming up Friday with only a couple minutes to give an answer either way, and by the time I got upstairs and called my daughter and said, hey, six years is the best I can get - - I ask her everything.

MR. FOGT: Mr. Botts, I'm sorry to interrupt, and please, if the Court gives the opportunity to clarify.

Your Honor, may I have a brief moment to try to clarify all this, please?

THE COURT: Well, before you do that - -

MR. FOGT: Okay. Yes, sir.

THE COURT: - - let me ask the question.

MR. FOGT: Uh-huh.

THE COURT: We have a Jury here, Mr. Botts. A Jury would be selected to hear this case and decide whether you're guilty or not guilty of this offense, and we're ready to do that, if that's what you want to do.

I have a long standing policy since the day I began as the judge in this courtroom that if anyone wants a Jury trial, I'm more than prepared to provide them all the due process they're entitled to and give them the fairest trial they could ask for.

However, I consider the trial day the Jury's day, not anybody else's day, and if a person wants to plead guilty, they have to plead as charged with no deals on the table.

So, I mean, I - - if a person's going to do that, I accept a guilty plea if they choose to do that.

What is it you want to do? Do you want a trial or do you want - -

DEFENDANT JEFFREY BOTTS: I tried to take the deal as of Friday, and I had to wait, and I asked my daughter, so we was a couple minutes late of getting over here. If the three years mandatory - -

THE COURT: Well, okay. I hear what you're saying; but what I just stated is where we are today. So you can either - -

DEFENDANT JEFFREY BOTTS: That's what - -

THE COURT: - - choose to have a Jury trial, or you can choose to plead guilty. Those are your two choices.

Now, I'll let you talk to your Counsel about this for a moment, but we're going to be moving along here because we've killed a lot of time - -

DEFENDANT JEFFREY BOTTS: Right, but I thought we was talking about where I stood with my attorney. I know I, I just took an open plead, but I'm - - you know. I'd like to ask if we could just - -

THE COURT: Well, it's a plea of guilty. I don't know - - you can call it whatever you want. It's a plea of guilty.

I make the decision as to what I'm going to do on the case, and I don't have enough information to make that decision - -

DEFENDANT JEFFREY BOTTS: Oh, well, see then I'm - -

THE COURT: - - other than the fact you have to receive a prison sentence.

DEFENDANT JEFFREY BOTTS: - - then I'm even more confused, sir, so I'm sorry.

THE COURT: Well, you're pleading guilty to an offense that calls for mandatory imprisonment.

DEFENDANT JEFFREY BOTTS: Right.

THE COURT: So you will receive a prison sentence.

DEFENDANT JEFFREY BOTTS: Right, I know this.

THE COURT: I don't have enough information at this point to determine what that amount would be, but I will tell you I'm going to request a Pre-Sentence Investigation whether you're found guilty at trial or whether you choose to plead guilty.

DEFENDANT JEFFREY BOTTS: That's, that's - -

THE COURT: Those are your decisions, but right now - - let me kind of answer a question upfront here.

I rarely, if ever, allow someone to get a new lawyer on a day of trial - -

DEFENDANT JEFFREY BOTTS: Okay.   Well, that - -

THE COURT: - - and that's pretty much backed up by case law so, and Mr. Fogt has indicated to me he's prepared to go to trial, so if you want to have a trial, he's totally prepared and ready to go.

So we're at a point here where we're either having a trial or we're going to have a guilty plea as charged.   It's your decision.

DEFENDANT JEFFREY BOTTS: Right, I understand that.

THE COURT: We're going to move on one of those two.

DEFENDANT JEFFREY BOTTS: I - - what I'm asking is there's - - can I go to, like, my decision on Friday to take the deal, and let me just get everything behind this?

THE COURT: No, Friday's behind us.   Today's the morning of the trial.   I've got a Jury out here waiting.

DEFENDANT JEFFREY BOTTS: I know.   I understand that.   The E-Mail was sent, so I was - - if I can't change Counsel so - - and changing now is just, there's no reason for it, so I took the plea.

THE COURT: So you're telling me you want to plead guilty at this point?

DEFENDANT JEFFREY BOTTS: Yes, sir.

THE COURT: And you understand there's a process of a question and answer process I have to go through with you; do you understand that?

DEFENDANT JEFFREY BOTTS: Yes, sir.

THE COURT: Is that what you want to do?

DEFENDANT JEFFREY BOTTS: Yes, sir.

Thereafter, as the trial court was conducting the plea hearing, the following exchange occurred:

THE COURT: Has your attorney answered your questions?

DEFENDANT JEFFREY BOTTS: Yes, sir.

THE COURT: And are you satisfied with the legal advice you've received so far?

DEFENDANT JEFFREY BOTTS: I understand it.   If - -

THE COURT: Do you want to say some more?   Go ahead.

DEFENDANT JEFFREY BOTTS: I don't know if I'm totally satisfied because I don't - -

THE COURT: Well, before we - -

DEFENDANT JEFFREY BOTTS: - - understand - -

THE COURT: - - before I can accept a guilty plea, I want to make sure you have - -

DEFENDANT JEFFREY BOTTS: I think Friday cut me off with a little too quick, and I just - - it bunched me up.   So I understand where he's coming from, and we've had a long time to discuss it, so I, you know - -

* * *

MR. FOGT: Can I be heard briefly on Friday so we can move, can I be brief - - can I be heard briefly about this time frame so we can move forward?

THE COURT: All right.

MR. FOGT: Thank you.

THE COURT: If you'd like to.

MR. FOGT: Wednesday I brought the offer again, same offer, to Mr. Botts. He wanted a trial.

Friday we had a discussion. When I left the jail, he wanted a trial. He indicated to me that he tried to reach me by phone through a spouse and that went to voicemail.

I didn't have any signal or record of it; but not - - that doesn't mean it didn't happen.

I received a call later that night. No voicemail, but Saturday I got one. I talked to the person. Let Avery know. I know Mr. Botts is upset that he wasn't able to reach me on Friday to possibly take the plea deal, so that's where I believe the miscommunication lies. Thanks for letting me be heard.

{¶ 6} A trial court has the discretion to reject a proposed plea agreement, but, of course, this discretion may be abused. *State v. Switzer*, 8th Dist. Cuyahoga No. 93533, 2010-Ohio-2473, ¶ 11, citing *City of Akron v. Ragsdale*, 61 Ohio App.2d 107, 399 N.E.2d 119 (9th Dist.1978); *State v. Jenkins*, 15 Ohio St.3d 164, 222-223, 473 N.E.2d 264 (1984).

{¶ 7} A trial court's reliance on an absolute policy when rejecting a plea agreement may constitute an abuse of discretion. *State v. Hunt*, 4th Dist. Scioto No. 1536, 1985 WL 8359, *3 (blanket policy rejecting plea agreements after jury cards were mailed to prospective jurors found to be an abuse of discretion); *State v. Fitzgerald*, 188 Ohio App.3d 701, 2010-Ohio-3721, 936 N.E.2d 585, ¶ 11 (8th Dist.) (blanket rejection of plea agreements after a trial date had been set found to be an abuse of discretion); *State v. Allen*, 8th Dist. Cuyahoga No. 98394, 2013-Ohio-1656, ¶ 6, 14 (adherence to policy of not accepting plea agreements after a jury was empaneled was an abuse of discretion where the State provided important evidence -- 911 recordings – only after the jury was empaneled).

{¶ 8} In a related context, we determined that a trial court abused its discretion when it rejected a proffered no contest plea based upon a blanket policy not to accept such pleas. *State v. Carter*, 124 Ohio App.3d 423, 428, 706 N.E.2d 409 (2d Dist.1997). We reasoned that, although a trial court has the discretion to reject a no contest plea, that discretion must be exercised "based upon the facts and circumstances before it, not on a blanket policy that affects all defendants regardless of their situation. In short, the trial court must exercise its discretion in each case." *Id.* at 428.

{¶ 9} Turning to a circumstance similar to the pending case, in *Switzer*, 8th Dist. Cuyahoga No. 93533, 2010-Ohio-2473, the Eighth District concluded that a trial court abused its discretion when, in accordance with a "blanket policy," it refused to accept a negotiated plea "proposed on the day of trial." *Id.* at ¶ 3. The court held that the trial court's reliance on a blanket policy was an abuse of discretion because such reliance precluded an evaluation of the circumstances surrounding the request to allow the

negotiated plea.  *Id.* at ¶ 14.

{¶ 10} Judge Sean Gallagher dissented, stating that he did not "view the trial court's refusal to entertain a plea bargain or accept a plea on the date of trial as a blanket policy of refusing to accept a [negotiated] plea without consideration of the facts and circumstances presented.  Rather, the court [imposed] a reasonable deadline for entertaining plea bargains and exercising its inherent right to control its docket."  *Id.* at ¶ 20.  Judge Gallagher further noted that there was "nothing in the record [to] suggest[ ] that the state and the defendant had an inability to arrive at a negotiated plea prior to the date of the trial."  *Id.* at ¶ 21.  Judge Gallagher concluded, based upon the record, that this was "not a situation where the trial court's preclusion against [negotiated] pleas [on the scheduled trial date fail[ed] to consider the facts and circumstances presented."  *Id.*

{¶ 11} It is reasonable for a trial court to have a general policy against the acceptance of a negotiated guilty plea on the date of a scheduled trial.  Turning to the pending case, the trial court's pretrial order, filed over four months before the scheduled trial, stated that "[a]bsent any extenuating circumstances, any plea taken after the final pretrial will only be accepted as charged in the indictment * * * ."  This reflects a general, as opposed to an absolute, policy that allows the trial court to determine whether the circumstances justify a deviation from the policy.

{¶ 12} The record reflects that Botts, in a discussion with his attorney on the Wednesday before the scheduled Monday trial, reaffirmed his rejection of the State's offer.  Botts, on this occasion, indicated he "wanted a trial."  Botts reiterated this position to trial counsel on the Friday before the scheduled trial.  This, it seems, was consistent with Botts's "thinking [that] maybe [he] could get a little less time if [he] waited."  There is

nothing in the record to suggest that Botts was prevented from making an informed decision regarding the State's offer prior to the morning of the scheduled jury trial. Under the circumstances of this case, we cannot conclude that the trial court abused its discretion when it followed its general policy not to allow a negotiated plea on the date of a scheduled jury trial. Botts's assignment of error is, thus, overruled.

{¶ 13} The judgment of the Greene County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J., concurs.

DONOVAN, J., dissents:

{¶ 14} I dissent. I would reverse given the court's unambiguous statement to Botts on the morning of the trial. "I have a long standing policy since the day I began as the judge in this courtroom that if anyone wants a Jury trial, I'm more than prepared to provide them all the due process they're entitled to and give them the fairest trial they could ask for. However, I consider the trial day the Jury's day, not anybody else's day, and if a person wants to plead guilty, they have to plead as charged with no deals on the table." This unequivocally states a blanket policy and runs afoul of the caveat "* * * the trial court must exercise its discretion in each case." *Carter,* 124 Ohio App.3d at 428, 706 N.E.2d 409. The record reflects that the trial court did not consider Botts's assertion that he tried, albeit unsuccessfully, to notify his attorney on the Friday before the Monday trial that he wanted to accept the plea bargain.

{¶ 15} Furthermore, the court's own records establish that the court's purported cutoff date for negotiations – the final resolution hearing -- did not take place consistent

with its own policy. The trial court's Arraignment Judgment Entry, filed April 6, 2018, stated:

> The defendant must be present for the final resolution hearing. The court will set the date of the final resolution hearing as the plea cutoff date for any negotiated plea. Absent any extenuating circumstances, any plea taken after the final pretrial will only be accepted as charged in the indictment and the court will consider imposing sentence at the time of plea.

This same entry sets a final resolution hearing for April 11 at 1:45 p.m. and the jury trial for April 30 at 8:30 a.m. However, on April 11, counsel for Botts filed two motions: a request for a bill of particulars and a discovery request. Thereafter on April 16, 2018, Botts requested a continuance of both the final resolution hearing date ("Final Pretrial") and the trial date, noting "the State and Defense are discussing this matter further." That is, negotiations were ongoing.

{¶ 16} Thereafter, no new final resolution hearing date was set establishing a new plea cutoff date. This failure certainly implicates Botts's due process rights. I agree with the majority that a court may choose to set a reasonable deadline for entertaining plea negotiations, given the court's right to reasonably control its docket. However, when it does seek to do so, the record should affirmatively reflect the cutoff date as well as the accused's presence at the final resolution hearing, wherein the accused either accepts or rejects the final offer and is put on notice, consistent with due process, that on the morning of the trial, absent extenuating circumstances, the court only accepts guilty pleas to all counts. Botts did not reject a deal in open court on any set final resolution hearing date, and the trial court did not evaluate any "extenuating circumstances".

**{¶ 17}** Several Ohio courts have determined that a trial court abuses its discretion when it rejects a plea agreement by relying on a blanket policy rather than considering the facts and circumstances of the particular case. *Switzer*, 8th Dist. Cuyahoga No. 93533, 2010-Ohio-2473, ¶ 15 (reversing trial court's refusal to accept a plea agreement based on its "unvaried policy of not accepting plea agreements on the day of the trial"); *State v. Raymond*, 10th Dist. Franklin No. 05AP-1043, 2006-Ohio-3259, ¶ 15; *State v. Graves*, 10th Dist. Franklin No. 98AP-272, 1998 WL 808356 (Nov. 19, 1998) (finding an abuse of discretion after trial court refused the defendant's plea based upon its blanket policy of not accepting no contest pleas); *State v. Hunt*, 4th Dist. Scioto No. 1536, 1985 WL 8359 (Oct. 22, 1985) (finding abuse of discretion when the trial court refused to accept a plea agreement because it had a blanket policy of rejecting agreements after jury selection).

**{¶ 18}** As a general proposition, the existence of discretion requires its exercise. When a court establishes a broad policy based on events unrelated to the individual case before it, no discretion has been exercised. The trial court did not acknowledge the lack of a final resolution hearing or the lack of a new docketed plea cutoff date, but instead cited its fixed policy of not accepting a guilty plea on the morning of trial to the final offer. Thus, I would reverse.

Copies sent to:

David M. Morrison
Sean Brinkman
Hon. Stephen Wolaver