**[Cite as *State v. Goss*, 2020-Ohio-207.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

<table>
<tr><td>STATE OF OHIO</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Plaintiff-Appellee</td><td>:</td><td>Appellate Case Nos. 2019-CA-14 &</td></tr>
<tr><td></td><td>:</td><td>2019-CA-15</td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td>Trial Court Case Nos. 2018-CR-939 &</td></tr>
<tr><td>KENNETH W. GOSS</td><td>:</td><td>2019-CR-2</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Defendant-Appellant</td><td>:</td><td>(Criminal Appeal from</td></tr>
<tr><td></td><td>:</td><td>Common Pleas Court)</td></tr>
</table>

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of January, 2020.

. . . . . . . . . . .

DAVID M. MORRISON, Atty. Reg. No. 0087487, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, Appellate Division,  61 Greene Street, Suite 200, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

JOE CLOUD, Atty. Reg. No. 0040301, 3973 Dayton-Xenia Road, Beavercreek, Ohio 45432
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  Kenneth W. Goss appeals from the trial court's March 29, 2019 judgment convicting him on his no contest pleas to multiple drug-related offenses in Greene C.P. Nos. 2018-CR-939 ("the 2018 case") and 2019-CR-2 ("the 2019 case").  At the plea hearing addressing both cases, the trial court promised Goss that it would not impose a prison term in the 2019 case, and then it did so.  Therefore, Goss's sentence in the 2019 case is reversed and remanded for the limited purpose of imposing monitored time as the sentence, as promised by the trial court.  The judgment in the 2019 case is affirmed in all other respects.  The trial court's judgment in the 2018 case is also affirmed.

{¶ 2}  On December 3, 2018, Goss was indicted on 17 drug-related offenses, with three forfeiture specifications, in the 2018 case.  On January 4, 2019, Goss was indicted on three additional drug-related offenses, with one forfeiture specification, in the 2019 case. The trial court scheduled a final resolution conference in each case for January 18, 2019, and a jury trial for February 4, 2019.  The entries included the following notice:

(THE DEFENDANT MUST BE PRESENT FOR THE FINAL RESOLUTION
CONFERENCE.  THE COURT WILL SET THE DATE OF THE FINAL
RESOLUTION CONFERENCE AS THE PLEA CUT-OFF DATE FOR ANY
NEGOTIATED PLEA. ABSENT ANY EXTENUATING CIRCUMSTANCES,
ANY PLEA TAKEN AFTER THE FINAL RESOLUTION CONFERENCE
WILL ONLY BE ACCEPTED AS CHARGED IN THE INDICTMENT AND
THE COURT WILL CONSIDER IMPOSING SENTENCE AT THE TIME OF
THE PLEA.)

{¶ 3}  On January 16, 2019, the State filed a motion in each case to join the cases for trial.  The motions stated:

In Case 2018 CR 0939, Kenneth W. Goss is alleged to have committed multiple counts of trafficking in drugs as well as possession of drugs, over a period of time beginning in September of 2018 and ending in November of 2018. Counts 7, 8, and 9 of the Indictment in Case No. 2018 CR 0939 arise from an alleged drug transaction between Mr. Goss and the A.C.E. Task Force on October 30, 2018.

However, the Bureau of Criminal Investigation and Identification * * * required additional time to adequately conduct a laboratory analysis of all substances alleged to have been sold by Mr. Goss on October 30, 2018. The charges contained in the Indictment in Case No. 2019 CR 002 are the result of the additional laboratory analysis having been completed for the substances alleged to have been sold by Mr. Goss on October 30, 2018. The charges arise from the same facts.

{¶ 4} On February 4, 2019, Goss filed a motion to continue in each case, which set forth the following arguments: Goss's counsel was appointed on the 2018 case on December 13, 2018, and she received discovery on December 20, 2018, which included 120 pages of reports and a DVD. Counsel was appointed on the 2019 case on January 14, 2019, and the final pre-trial on both cases was held on January 18, 2019. Goss argued that, at the conference, counsel "made it clear that this case would not be proceeding to trial and that plea negotiations had just begun between the State and the defense." On February 1, 2019, defense counsel learned that Goss's co-defendant had agreed to testify against him and that the co-defendant had requested and was granted a continuance of her trial. Counsel "was told that she had missed the 'plea cutoff date,' "

but she consulted with the assistant prosecuting attorney about this date, and he "similarly had no knowledge of this date," of which the court stated it had informed both parties at the final pre-trial. Goss argued that the court had not filed "an order memorializing such an important date" and that neither defense counsel nor the State was "given so much as an informal notice on paper of this date."

{¶ 5} In his motions, Goss further asserted that defense counsel was told by court personnel that the trial would have to proceed because the jury could not be called off, but he argued that the "inconvenience of the citizens of Greene County to appear for jury duty when a trial is continued pales in comparison to the rights of a defendant facing nearly three decades in prison." Goss also argued that the court acted arbitrarily in granting the co-defendant's request for a continuance but not Goss's. Goss argued that he met all the factors in favor of a continuance, and that the request for a continuance of the trial was only to allow him to accept the State's plea offer. Goss asserted that his attorney had not had enough time to prepare for a trial, considering that there were 20 charges, and that the "recently obtained information of a potential witness against [Goss] in no way was precipitated by [Goss] to create undue delay." Finally, Goss asserted that a denial of the motions for continuance would deny him his right to the effective assistance of counsel, because counsel "never intended to proceed to trial and therefore never prepared for trial."

{¶ 6} On February 4, 2019, Goss also filed a handwritten document asking that his counsel be replaced and giving his reasons for the request.

{¶ 7} At Goss's plea hearing on February 4, 2019, the following exchange occurred after defense counsel indicated that Goss would plead no contest.

[DEFENSE COUNSEL] MS. CONNELLY: * * * Your Honor, this morning I filed a Motion for a Continuance. It's my understanding, we did discuss in chambers, that the Court at this time has denied that Motion for Continuance - -

THE COURT: Well, I have reviewed the motion. In regard to Case Number * * * 19-002, I will grant that request if the Defense so chooses. I'm denying in Case Number 18 CR 939.

MS. CONNELLY: Your Honor, * * * did the Court rule on the State's Motion for Joinder of Indictments?

* * *

MS. CONNELLY: * * * I guess my point is, * * * if the Court would have been inclined to join the indictments, it's really - - if it's going to be granted on one, it doesn't make sense for it to not - - I guess I just need to know what the Court's position is on that motion?

[The court noted that it had not ruled on the motion for joinder in either case.]

MS. CONNELLY: So I guess my next question then would be: Was today's trial date for both cases or just the 2019 case or just the 2018 case?

THE COURT: Well, it might be moot in the sense that I'm - -

* * *

THE COURT: - - granting a continuance on 02, so in light of the fact the Court has not ruled in favor of the State's Motion, the fact you filed the Motion to Continue, and the Court's granting it in 02, I guess by virtue of that, I'm denying the Motion for Joinder.

MS. CONNELLY:   * * * And so today, though, would have been trial - -

THE COURT:   Trial for Case Number 18 CR 939.

MS. CONNELLY: * * * And I guess because of that, because these two cases are so closely linked, they arise out of the same couple of incidents - - these involved drug buys - - that really they're so intertwined that for us to agree to a Motion to Continue the 2019 case, when the bulk of the charges are in the 2018 case, doesn't make - - it wouldn't benefit my client, and so that's why the Defense initially is still requesting the continuance of the trial for both cases, but I understand that the Court is denying the 2018 CR 939.

Really the Motion to Continue is so that the Defendant can also benefit from the plea agreement reached by both the State and the Defense.

I also understand when we spoke in chambers, the Court did say even though he's going to be pleading to all charges, that you would listen to or entertain arguments for disposition?

THE COURT: Oh, absolutely.

MS. CONNELLY:   * * *

The negotiations between the State and the Defense ended up being a plea of four years.   That was recently extended. * * *

THE COURT:   When was * * * that plea?

MS. CONNELLY:   That was as recent as this weekend, your Honor.

* * *

MS. CONNELLY: * * * I discussed that with my * * * client, who is accepting of the plea with the understanding that it would have been stipulated to. I understand that's not happening.

Prior to that, the initial offer was extended at the final pretrial, which was January 18, of six years; and again, * * * throughout this case, it was always understood * * * that this case was never actually going to trial. That this was always going to be resolved by way of plea, and that the date today was simply a placeholder for that plea.

So through the negotiations, we've went from that initial offer of six years to an offer of four years, and that four years be run concurrent with his Montgomery County case, which is Montgomery County Case Number 2018 CR 3863.

He's already plead [sic] in that case and has been sentenced to three years mandatory time.

Today he's pleading No Contest with the hope that the Court accepts the recommendation for disposition by the State of four years to be run concurrent with that case.

Once the Defendant has plead [sic], the Defendant requests that a PSI be conducted, again, so that the Court [can] get to know a little bit more about the Defendant, and * * * to emphasize that four years would be in the best interest of resolving this case and would be a fair and equitable result for this Defendant.

And I need to put on the record today that the Court has given the

Defendant three options in this case, plea as charged, go to trial, or for the State to dismiss the charges - - which obviously is not in the Defendant's hands.

Because he has never wanted to go to trial, he is pleading today. He understands that his plea needs to be * * * voluntarily made, intelligently made, and we've discussed that in detail.

So with that background the Defendant will be pleading No Contest today to the charges outlined in the State's plea agreement with the recommendation of the State by agreement of the Defense of four years to be run concurrently with the Montgomery County Case Number. * * *

THE COURT:   * * * I have a question for the State.   Are you familiar with the Court's rule that's been in place for 16 years that a plea on the day of the Jury trial when the Jury comes in must be as charged without any deals?

[PROSECUTOR] MR. MORRISON:   You Honor, that was given in the context of a motion that I knew was pending that I did not know how the Court - -

THE COURT:   No.   My question is: Are you aware of that rule that the Court's had for 16 years?

MR. MORRISON:   Of course, I am.

THE COURT:   Then why were you making an offer knowing that the next day we get-together that rule would apply?

MR. MORRISON:   Your Honor, it was in the context of the motion

that I knew that she was going to be filing, but I did not know how the court was going to take that Motion to Continue.

It was a counteroffer that was extended by the Defense. I ran it by –

THE COURT: That counteroffer - -

MR. MORRISON: - - my detective - -

THE COURT: - - was made on January 18 when we had the final pretrial?

MR. MORRISON: She extended another - -

THE COURT: Well, I guess my bottom line here is: When we show up for day of trial, and we have a Jury brought in, the only plea the Court will take is as charged with no deals from the State. That has been the rule from beginning to end.

Now, whether there's a continuance or not, I'm not sure you're being fair to the Defense by offering something that the Court will not consider.

* * *

THE COURT: What was the purpose of that offer?

MR. MORRISON: It was, it was an acceptance of a counteroffer after having extensive conversations with, with Defense Counsel as to what the Court would probably do, what the Court would likely do, but - -

THE COURT: It's a conditional offer?

MR. MORRISON: - - but, again - -

THE COURT: If the Court were to change the rule - -

MR. MORRISON:   * * * [S]hould the court accept her motion - - it was not a simple Motion to Continue because of a * * * scheduling conflict.

It was a Motion to Continue based on, I believe, what was a misapprehension as to a plea cutoff date.

* * *

When she informed me she was going to file a motion based on in part a misapprehension of a plea cutoff date, again, with the benefit * * * of knowing what the Court's general policy is, I did not know if that misapprehension would be enough for the Court to continue it, and let us continue the negotiations. * * *

THE COURT:   Let's assume for a moment there was no plea cutoff date.   For 16 years, the rule has been you show up day of trial, you plead as charge[d].   No deals.

* * *

THE COURT:   So forget a misunderstanding as to a plea cutoff. * * *

Now, if the Defense wish[es] to make a continuance, you can certainly agree, disagree, whatever you want to do with the continuance, but I'm not sure making an offer is of any moment under those circumstances because if the Court grants the continuance, then you can make an offer.

So what's the purpose of making an offer waiting for the Court to decide whether a continuance should take place?

MR. MORRISON:   Again, it was because of the misapprehension of

the plea cutoff is why we're here today.   It's why we're having to do this on day of trial.

THE COURT:   You mean, a plea cutoff that was scheduled for January 25?

MR. MORRISON: * * * I do not have that date in my file.

THE COURT:   * * *

The Court has a rule that's in my standard trial practice forms - - which have been handed out to lawyers for the past 16 years – that says date of trial, it's a plea as charged.   No deals.

I guess my point is, the State should be aware of this in terms of their relationship to the Defense and make reasonable and fair offers in a timely manner to the Defense if you intend to do something.

* * *

THE COURT:   Now, I will tell you assuming we go forward with the plea, you will be entitled to make any recommendation you wish to the probation department in the course of the PSI.   That's your prerogative.

* * *

THE COURT:   And the Court will listen to that as much as I'll listen to any recommendation the Defense makes in this case.

* * *

THE COURT: * * *

Be aware of when our dates are, and when the dates can be addressed, and what needs to be addressed.

I mean, I'm * * * kind of flummoxed by the fact that an offer's made over the weekend when clearly the Court will not under any circumstances consider that offer in light of the rule the Court employs in this case.

MR. MORRISON: Your Honor, in fairness, * * * I made it very clear that the Court would not let us stipulate to any number, and what I've told Ms. Connelly even just this morning is that I would stand by my recommendation of four years.

* * *

THE COURT: * * *

I understand Mr. Goss wishes to enter a No Contest Plea at this time.

MS. CONNELLY: That's correct, your Honor.

THE COURT: Mr. Goss, I'm going to ask you a series of questions today regarding this plea. And the first thing I want to say to you is if I ask you a question that you don't understand or you're not sure what the question was, ask me to repeat the question.

And the reason I say that is I want you to think about the question carefully because we will record your answer, and it's going to be locked down.

So think about the question. If you have any question you want to ask me about anything we're discussing, I want you to ask me that question; okay?

I want to hear your thoughts, make sure that we're all on the same page as we go through this process.

Also want you to know if you want to ask your lawyer a question privately, just turn to your lawyer and start talking.

Take as much time as you need to get your answer; and when you're done, we'll continue with our question and answer process; okay? Did you want to say anything right now?

(WHEREUPON, Ms. Connelly confers with Defendant Kenneth Goss.)

DEFENDANT KENNETH GOSS: I feel like we've ran out of time. It's not my fault. * * * I don't want to blame, but it's my Counsel's fault we've ran out of time, and * * * I don't feel like I should have to take, push a No Contest Open Plea for his case at this point * * *

THE COURT: Well, you don't have to plead. We have a jury out here. We can have a trial.

DEFENDANT KENNETH GOSS: I don't feel like I should have to go to Jury trial. * * * I feel like I should have more time. * * *

* * *

THE COURT: We all know that you've got a limited amount of time before we have to have a trial, and that's why we're having our trial scheduled today.

DEFENDANT KENNETH GOSS: * * * I could sign a speedy trial waiver. * * *

THE COURT: Well, we're beyond that today. We have a Jury out here waiting to try this case or we're going to do a plea. It's your decision.

* * *

DEFENDANT KENNETH GOSS: Wee. I guess we'll take a plea.  I don't want to go to Jury trial.   I'm facing quite a bit of time if found guilty - -

* * *

DEFENDANT GOSS:  Do you have a copy of the paper I sent in today to the Judge of reasons why I needed new Counsel?

* * *

THE COURT: * * * I have reviewed your request.   I believe the discretion rests with the Court to decide on day of trial whether we should switch Counsel, and I'm going to deny that request at this time.

* * *

DEFENDANT KENNETH GOSS: Move on with the No Contest Plea.

{¶ 8} The court then ascertained that Goss was 37 years old, a U.S. citizen, not under the influence of drugs or alcohol, and able to understand the proceedings.   Goss indicated that he and defense counsel discussed the nature of the charges against him and that he understood the nature of the charges.   When asked if he was aware of the facts underlying the charges "that the State's provided in the discovery packet," Goss indicated to the court that he "received [his] discovery packet yesterday, less than 24 hours ago."   The following exchange occurred:

THE COURT: * * *

* * *

Now, the question is, do you feel that in reviewing the discovery package yesterday, that you are comfortable with the assessment that you should go forward with a No Contest Plea?

In other words * * * having reviewed the evidence in this case, do you feel comfortable entering a plea where the Court would ultimately make a finding of guilty based upon your belief that from the evidence that you read, the State has sufficient evidence that if presented to a Jury, they could find you guilty beyond a reasonable doubt?

Now, do you wish to go forward with your plea with that understanding?

DEFENDANT KENNETH GOSS: Yes.

{¶ 9} Defense counsel then represented to the court that prior to providing Goss with a copy of the discovery packet, she "review[ed] with him all of the discovery that I'd received from the State of Ohio, so even though he didn't have his own copy, he did have an opportunity to review it himself[.] * * * I answered questions that he had."

{¶ 10} The court then asked Goss if he had shared with his attorney with all the information he felt she needed to know in order to fully represent him. Goss responded, "Not really, but I don't want to go to a Jury trial." The court then called a recess to allow Goss to discuss with his attorney anything he felt she needed to know that he had not told her.

{¶ 11} After the recess, the following exchange occurred:

THE COURT: * * * Mr. Goss, have you provided all the information to your attorney that you fell she needs to know in order to represent you?

DEFENDANT KENNETH GOSS: Yes, your Honor.

THE COURT: Has your attorney answered your questions so far?

DEFENDANT KENNETH GOSS: Yes.

THE COURT: Now, do you understand you have a Constitutional Right to have this case resolved with a speedy and public trial to a Jury with a verdict of either guilty or not guilty?

DEFENDANT KENNETH GOSS: Yes.

THE COURT: And I take it you have affirmatively chosen not to pursue that option?

DEFENDANT KENNETH GOSS: Yes.

THE COURT: Has anyone caused you to feel rushed in making your decision to enter a Plea of No Contest today or has anyone left you with the impression you have no choice to enter a No Contest Plea?

* * *

DEFENDANT KENNETH GOSS: No.

THE COURT: Has anyone said any of that to you?

DEFENDANT KENNETH GOSS: Nobody's rushed me.

THE COURT: Has anyone caused you to feel pressured, coerced, compelled, manipulated, or frightened in making your decision to plead No Contest?

DEFENDANT KENNETH GOSS: No.

THE COURT: From what you've told me, can I conclude for the record that your decision to enter a No Contest Plea today is a decision you are making on your own. It is a free choice, from more than one choice. You're doing it voluntarily, without any improper influence or duress from any person or any source?

DEFENDANT KENNETH GOSS:   Yes.

THE COURT:   And you understand that a No Contest Plea is one in which you're not making an admission of guilt.   You're simply saying that the facts of this case are not being contested.   That the decision to plead No Contest cannot be used against you in any subsequent civil or criminal proceeding, but that you should expect upon the conclusion of the plea, the Court would make a finding of guilty; do you understand all that?

DEFENDANT KENNETH GOSS:   Yes.

THE COURT: Now, when we end the case in this manner, you'll be giving up important Constitutional Protections.   I have an obligation to make sure you understand those rights and confirm that you're willing to, to waive those rights.

The Constitutional Rights that you are afforded when you're accused of a crime is a right to a speedy and public trial to a Jury, and we have a Jury outside right now.

You have the right of compulsory process, to require witnesses to come to trial to testify in your behalf.

You have the right to require the State at trial to prove you guilty beyond a reasonable doubt.   If they don't, then the Jury must make a finding of not guilty.

You give up the right to confront witnesses who testify against you by having your Counsel cross-examine those witnesses for their truthfulness of the facts and their integrity.

And, finally, you give up the right not to be compelled to be a witness against yourself at trial, which means no one can force you to testify at trial if you don't want to testify nor can anyone use the decision not to testify against you in any way in front of that Jury.

Now, these are the Constitutional Rights that a person gives up when they enter a No Contest Plea. Do you understand these rights?

DEFENDANT KENNETH GOSS: Yes.

* * *

THE COURT: Counsel satisfied the Rule 11 Forms are correct?

MR. MORRISON: Yes, your Honor.

MS. CONNELLY: Yes, your Honor.

{¶ 12} After conferring with defense counsel, Goss acknowledged his signature on the plea form and that he went over it with defense counsel. The court then accepted Goss's no contest pleas to 17 drugs offenses in the 2018 case, including several forfeiture specifications, and his no contest pleas to three drug offenses in the 2019 case. The court noted that several of these offenses merged for purposes of sentencing, including one offense in the 2019 case that merged with an offense in the 2018 case, and that the State had elected to proceed on nine offenses. The court informed Goss that he faced a maximum possible sentence of 25 and a half years, which included a mandatory term of two to eight years on Count 14 in the 2018 case, and of the possible fines. Goss indicated his understanding of the possible sentence. Then the following exchange occurred:

THE COURT: Now, I'm just going to tell you right now, in [the 2019

case], which consists of the three - - well, I guess two felony fives, the Court will not be imposing a prison sentence on those cases.

I'm going to impose monitored time, which basically results in no consequence to you in effect.

In other words, in [the 2018 case], you will be serving whatever appropriate sentence will be imposed, but you'll not be serving a prison sentence in [the 2019 case] - -

DEFENDANT KENNETH GOSS:   Yes, I understand.

THE COURT:   - - the fifth degree felonies, and I'll just commit to that right now; all right?

DEFENDANT KENNETH GOSS:   Yes, I understand that.

{¶ 13} Finally, the court advised Goss that he was subject to mandatory post-release control on Count 14 for a period of three years, and to optional post-release control on the remaining counts; Goss indicated his understanding of post-release control. The court ordered a presentence investigation report (PSI) and explained to Goss that he would be sentenced at a future date when the court had more information about Goss and about the case.   As such, the court informed Goss that it could not tell him at the plea hearing exactly what the sentence would be, but that there would be a sentence imposed.   Goss indicated his understanding of these facts and his intention to proceed with his no contest pleas.

{¶ 14} The court accepted Goss's no contest pleas and found him guilty of those offenses.   The court scheduled disposition for March 29, 2019.

{¶ 15} At the sentencing hearing, the trial court reviewed the original charges, the

counts that had merged, and the counts on which the State had elected to proceed (Counts 1, 4, 5, 8, 9, 10, 13, 14, and 16 in the 2018 case, and Counts 2 and 3 in the 2019 case). After the prosecutor noted that Count 1 in the 2019 case and Count 2 in the 2018 case were allied offenses, the court noted that "there would be no sentence on Count 1" in the 2019 case. The court noted that it had received and reviewed the PSI. The following exchange occurred:

> MS. CONNELLY: Your Honor, we stand on our Sentencing Memorandum. We also request the four years run concurrently with the Montgomery County case, which is 2018 CR 3863; and we had made a record the day of the plea that that four years to run * * * concurrently with the Montgomery County case was the offer from the State.

> THE COURT: The Court will note that the Rule of Court is that a plea on the day of trial results in no agreements; and, therefore, the Court did not acknowledge any understanding between counsel prior to that date.

{¶ 16} In the 2018 case, the court sentenced Goss to 12 months on Count 1, 12 months on Count 4, 36 months on Count 5, 36 months on Count 8, 18 months on Count 9, 36 months on Count 10, 18 months on Count 13, five years on Count 14, and 18 months on Count 16. The court ordered that all of the sentences be served concurrently, for a "total effective sentence of five years of which five years is mandatory." In the 2019 case, the court sentenced Goss to concurrent terms of 12 months on Counts 2 and 3, and the court ordered that "[t]hese sentences will be served concurrently to the sentences imposed" in the 2018 case. The court advised Goss that he was subject to mandatory post-release control for the second degree felony. Finally, the court ordered Goss's

sentence to be served concurrently to the term imposed in Montgomery C.P. No. 2018 CR 3863.

{¶ 17} Goss asserts two assignments of error, which raise nearly identical arguments. He argues that the trial court erred as a matter of law, abused its discretion, and committed plain error at the plea hearing "when it failed to comply with C[rim].R. 11 because the no contest plea of the defendant was not made knowingly, intelligently, freely, and voluntarily thereby denying the Defendant his rights to due process granted by the Ohio and United States Constitutions."

{¶ 18} In his first assignment of error, Goss contends that the trial court "failed to reveal" to him the specific facts to which he was pleading, failed to inquire if he understood those facts as reflected in the bill of particulars and the two indictments, denied him the effective assistance of counsel, accepted a no contest plea to a defective count (Count 14), failed to timely rule on motions pending before the court, actively prevented him from asserting his due process right to waive the speedy trial requirement, and made "unkept promises to him regarding sentencing." He also asserts that "[a]ll of these events occurred at a jury trial date converted into a plea hearing in an atmosphere of intimidation, pressure, and a lack of fundamental fairness, or with an efficient dispatch of justice."

{¶ 19} Goss asserts that "an overall reading of the plea transcript" demonstrates that the trial court "dominated and controlled" his decision-making process. According to Goss, the trial court asked him how he pled to the charges, but not as to the facts underlying and supporting those charges; the trial court also never referenced the indictments or the bill of particulars when asking Goss how he pled to the charges. The trial court "simply said the no contest plea gave up the right to contest the facts." Goss

asserts that he "was entering blind no contest pleas" and that he "did not know the facts."

{¶ 20}   Goss further asserts that, in the 2018 case, the court found Counts 14 and 15 to be allied offenses of similar import, noting that the "enhancement" for those offenses was five times the bulk amount but less than fifty times the bulk amount of Methamphetamine, but Count 14 of the indictment contained "no factual statement of the amount of Methamphetamine recovered" from him.   Goss argues that, according to the lab report referenced in the indictment, 18.12 grams of Methamphetamine were recovered from him, and that amount "should have been classified as either a felony four or perhaps a felony five * * * without the possibility of mandatory imprisonment."   (Count 14 described the offense as a second-degree felony.) Goss contends that he "was not counse[led] by anyone in this case" or "informed" by the trial court, such that his no contest plea to Count 14 "could not possibly have [been] given knowingly, intelligently, freely, and voluntarily."

{¶ 21} Goss asserts that he needed more time but was "forced, pushed and intimidated" into entering his no contest pleas, despite his willingness to sign a speedy trial waiver.   Finally, Goss contends that the trial court also "made a promise" before he entered his no contest plea that "it had no intention of ordering a prison sentence" in the 2019 case.

{¶ 22}   In his second assignment of error, Goss argues that "the trial court's attitude was unreasonable, capricious, arbitrary, and unconscionable" in refusing to allow him to sign a speedy trial waiver, which "was an abuse of [his] due process rights." According to Goss, the trial court "failed to even remotely consider" the possibility of continuing the 2018 case in the interests of justice, due process, and further plea

negotiations. Goss claims that the trial court denied him the benefit of effective assistance of counsel "in negotiating a plea agreement acceptable to the state and the defendant."

{¶ 23} Goss also asserts that the trial court's rule that it will not accept a negotiated plea on the day scheduled for trial is not contained in the Local Rules of Practice and Procedure of the Greene County Common Pleas Court, and therefore was arbitrary, capricious, and unreasonable. Goss directs our attention to the trial court's comment to the prosecutor that he was "not being fair to the defense" by offering a plea agreement beyond the time limit specified in this rule, knowing that the court would not consider it. From this statement, Goss infers that "1) defense counsel must generally not be aware of the rule, and 2) the trial court is aware of potential abuse," yet the trial court was "unwilling to hold the rule in abeyance on this occasion" or to grant Goss's request to continue the case "for the benefit of the defendant."

{¶ 24} Further, Goss contends that the court's failure to rule on the State's motion for joinder prior to the day scheduled for trial and the manner in which it disposed of the motion that day support the conclusion that the trial court acted unconscionably, arbitrarily, and unreasonably. He points out that the trial court made no finding of facts or conclusions of law to support its decisions on the motion for joinder or the denial of his request for a continuance; the court also did not allow his request for new counsel or give him "additional time to review the discovery and facts supporting the charges against him." Finally, Goss asserts that the trial court "gave [him] a ten minute break to discuss discovery and learn the facts of his cases," when it had taken "weeks of preparation" by defense counsel "to formulate coherent defenses" even without knowing whether the two

cases would be joined for trial.

{¶ 25} On appeal, Goss asks that we dismiss the cases against him or, in the alternative, "vacate his pleas" and remand for further proceedings.

{¶ 26} The State responds that the transcript of the Crim.R. 11 plea colloquy clearly demonstrates that the trial court complied with the rule; "[u]nlike in misdemeanor cases * * * the State is not required to explain the circumstances of how the offenses were committed, but allows the court to make a finding of guilt based upon the facts alleged in the indictment." Moreover, the State contends that Goss's assertion that he did not know the facts underlying the charges is not supported by the record. The State argues that "the purpose of the recess during the plea hearing was not so that [Goss] could learn additional facts from his attorney; the recess was called when [Goss] said that he had not shared everything with his attorney that she needed to represent him."

{¶ 27} According to the State, the facts contained in the indictment and bill of particulars in the 2018 case were sufficient to sustain a conviction for a second-degree felony, and Goss's attorney was not ineffective in failing to assert that the offense was a fourth or fifth-degree felony. Specifically, the State contends that Counts 14 and 15 complied with R.C. 2941.05, as the counts contained statements that Goss had committed aggravated trafficking in drugs and aggravated possession of drugs (in violation of R.C. 2925.03(A)(2) and R.C. 2925.11(A), respectfully), both felonies of the second degree involving the trafficking and possession of Methamphetamine, a Schedule II drug. The indictment incorporated the laboratory report, whereas the bill of particulars specified the amount of Methamphetamine to be 18.12 grams. The State contends that, by mirroring the language of R.C. 2925.03 and R.C. 2925.11, the indictment contained

the essential facts of the charges, the numerical designation of the applicable statutes, and placed Goss on notice of the elements of each offense. Further, the State asserts:

> Both the Indictment and the Bill of Particulars specified the amount of methamphetamine was greater than five times the bulk amount but less than fifty times the bulk amount. The bulk amount of methamphetamine is three grams, as defined by R.C. § 2925.01(D)(1)(g). See also *State v. Silcott*, 2d Dist. Clark No. 2017-CA-12, 2018-Ohio-3507, ¶ 37. Because 18.12 grams is greater than five time the bulk amount (15 grams), Count 14 was a second-degree felony and carried a mandatory prison term. R.C. § 2925.03(C)(1)(d) and § 2929.13(F)(5).

{¶ 28} The State asserts that, because the amount of Methamphetamine at issue in Counts 14 and 15 was greater than five times the bulk amount, the trial court did not err as matter of law or abuse its discretion in finding "that the Indictment (and Bill of Information) was sufficient to charge and sustain a conviction for a second-degree felony with mandatory imprisonment." Moreover, Goss was not denied the effective assistance of counsel because counsel did not challenge the indictment or bill of particulars on this basis.

{¶ 29} The State argues that the particulars of the negotiated plea agreement were never made part of the record beyond the State's willingness to stipulate to a four-year prison sentence to be served concurrently with Goss's sentence in a Montgomery County case. According to the State, it informed defense counsel that, if the requested continuance were granted, then the State would be willing to enter into a plea agreement calling for a stipulated four-year sentence. The trial court also acknowledged that, if the

continuance were granted, the parties would have been able to continue negotiations and the State could "make an offer." However, because the continuance was denied, the State never offered -- and defense counsel never requested -- the reduction or dismissal of any counts or a stipulated sentence. According to the State, defense counsel repeatedly acknowledged there would be no stipulated sentence, and the complete terms of the parties' agreement were "never even contemplated on the record."

{¶ 30} The State argues that Goss's use of one quote from the trial court (i.e., "I'm not sure you are being fair to the defense by offering something that the Court will not consider") is misleading in light of the court's acknowledgement that it would consider the State's recommendation; the State "does not abuse the process when it simply tells the defense what it intends to recommend in the event of a conviction, whether by a jury or through a plea as charged to all twenty counts." The State argues that Goss's plea was not rendered less than knowing and voluntary by the fact that the court sentenced him to five years instead of four, especially when he faced the prospect of more than 25 years.

{¶ 31} The State notes that Goss never asked for a joinder of the indictments and that Goss has not alleged "any particular prejudice" that he suffered due to the trial court's denial of the State's motion to join the cases for trial. The State points out that, because no questions of fact were involved in the court's decision to deny the motion, the court was not required to state its findings on the record, citing Crim.R. 12(F).

{¶ 32} With respect to Goss's request for new counsel, the State asserts that Goss's request was primarily based on his claim that he had not seen discovery and had not discussed the case or developed a defense strategy with his attorney. The State argues that the plea hearing transcript belies these claims and that the trial court did not

err or abuse its discretion when it denied Goss's request for new counsel on the day scheduled for trial.

{¶ 33} The State argues that Goss's plea was not rendered involuntary by the trial court's denial of a continuance and its adherence to its policy regarding plea agreements on the day of trial. According to the State, the trial court "did not deny [Goss] his right or ability to waive his own rights to a speedy trial, but rather rendered this issue moot" by denying the motion for a continuance in the 2018 case. The State asserts that the transcript "indicates that this issue was discussed and decided in chambers," and there were no factual questions presented for the court to resolve in deciding the motion for a continuance. Moreover, "there is nothing in this record to suggest" that the State and Goss were prevented from reaching a negotiated plea agreement before the day of trial, and the trial court "did not abuse its discretion by exercising its inherent authority to control its own docket."

{¶ 34} Finally, the State asserts that the trial court erred by not sentencing Goss to "community control sanctions/monitored time" in the 2019 case, but the record does not reflect that his sentence would clearly have been different but for the error, since the sentence in that case was ordered to run concurrently with the 2018 case.

{¶ 35} We begin our analysis with Goss's assertion that Count 14 of the 2018 case should have been classified as either a fourth- or fifth-degree felony "without the possibility of mandatory imprisonment." R.C. 2941.05 provides:

> In an indictment or information charging an offense, each count shall
> contain, and is sufficient if it contains in substance, a statement that the
> accused has committed some public offense therein specified. Such

statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the section of the Revised Code describing the offense or declaring the matter charged to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is charged.

*See also* Crim.R. 7.

{¶ 36} Count 14 of the indictment in the 2018 case stated:

KENNETH W. GOSS, on or about November 19, 2018, in Greene County, Ohio, or by some manner enumerated in Section 2901.12 of the Ohio Revised Code whereby proper venue is placed in Greene County, Ohio, did, knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, to wit: Methamphetamine, a Schedule II drug, as described in the laboratory report, incorporated herein by reference, in an amount equal to or exceeding five times the bulk amount but less than fifty times the bulk amount, when the offender knew or had reasonable cause to believe that the controlled substance was intended for sale or resale by the offender or another person, contrary to and in violation of Section 2925.03(A)(2) of the Ohio Revised Code and against the peace and dignity of the State of Ohio. **(Aggravated trafficking in drugs, a felony of the second degree, with mandatory imprisonment)**

{¶ 37} Count 15 (which the trial court merged with Count 14) stated:

KENNETH W. GOSS, on or about November 19, 2018, * * * did,

knowingly obtain, possess or use a controlled substance or a controlled substance analog, to wit: Methamphetamine, a Schedule II drug, as described in the laboratory report, incorporated herein by reference, in an amount equal to or exceeding five times the bulk amount but less than fifty times the bulk amount, contrary to and in violation of Section 2925.11(A) of the Ohio Revised Code * * * **(Aggravated possession of drugs, a felony of the second degree, with mandatory imprisonment)**

**{¶ 38}** The bill of particulars for Count 14 provided, in part:

**Manner in which statute was violated:** On November 16, 2018, Kenneth W. Goss agreed to sell 23 capsules of heroin and a quarter ounce (approximately 7.08 grams) of methamphetamine to an undercover detective (UC) for $240.00. Mr. Goss agreed to sell the above-referenced drugs on November 19, 2018. On November 19, 2018, the UC communicated by text message with a person who identified herself at Mr. Goss' "old lady", and who stated she was willing to facilitate the agreed transaction on Mr. Goss' behalf as Mr. Goss was sleeping. Mr. Goss then contacted the UC and advised that his girlfriend would meet the UC at 263 S. Detroit Street in Xenia, Greene County, Ohio to engage in the exchange of money for drugs.

A female later identified as Stacey Reese was seen leaving Mr. Goss' residence located at 244 E. Third St., Lot 196, Xenia, Ohio. Ms. Reese then proceeded to 263 S. Detroit Street in Xenia, Greene County, Ohio and met the UC where she gave the purported heroin and

methamphetamine to the UC in exchange for the $240.00. The UC agreed to drive Ms. Reese back to Mr. Goss' residence, and during the drive their vehicle was stopped by Xenia Police at which point Ms. Reese was arrested. On Ms. Reese's person was located the pre-recorded $240.00 in currency. Ms. Reese was advised of her *Miranda* rights, after which she stated that her conduct was a "joint effort," and indicated that the other person involved was Mr. Goss.

After the arrest of Ms. Reese, members of the Greene County ACE Task Force executed a search warrant at Mr. Goss' residence * * *. Mr. Goss was found standing next to several capsules of suspected heroin, a scale, and a ten dollar bill. After being advised of his *Miranda* rights, Mr. Goss admitted that another individual found at his residence was there to purchase 2 capsules of heroin for $10.00. Mr. Goss further admitted to possession of a bag of methamphetamine found in his room. A number of items were seized by the Task Force and submitted to MVRCL for testing. A laboratory analysis by Todd Yoak of the MVRCL confirmed the substances to include 18.12 grams of methamphetamine.

The bill of particulars contains identical language related to Count 15.

{¶ 39} Pursuant to R.C. 2925.01(D)(1)(g), the bulk amount of methamphetamine, a Schedule II drug, is "[a]n amount equal to or exceeding three grams." The amount confiscated from Goss, 18.12 grams, was greater than five times the bulk amount (15 grams). R.C. 2925.03 provides:

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:

* * *

(d) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated trafficking in drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term.

See also R.C. 2929.13(F)(5).

{¶ 40} We agree with the State that the indictment was sufficient to charge and sustain a conviction for aggravated trafficking in and/or possession of drugs as second-degree felonies. Regarding Goss's suggestion that he received ineffective assistance of counsel due to counsel's failure to advise him that Count 14 should have been otherwise classified, as this Court has noted:

In order to succeed on an ineffective assistance claim, [Defendant] must show that his trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. Strickland v. Washington,

466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, [Defendant] must prove that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688; *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

To show prejudice, [Defendant] must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688, 694; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

*State v. Hartman*, 2d Dist. Montgomery No. 27162, 2017-Ohio-7933, ¶ 30-31.

{¶ 41} Because Count 14 properly charged the offense of aggravated trafficking in drugs as a felony of the second degree, with mandatory imprisonment, Goss has not demonstrated that he was provided ineffective assistance of counsel.

{¶ 42} We next address Goss's arguments regarding the trial court's alleged failure to timely rule on the motions for joinder of the indictments and for a continuance, and the

court's failure to allow him to obtain new counsel. We note that Goss's assertion that the trial court failed "to make any ruling on the State's Motion for Joinder" mischaracterizes the record. The court clearly indicated that it granted the motion for a continuance in the 2019 case, and that "by virtue of that [it was] denying the Motion for Joinder."

{¶ 43} Regarding Goss's motion for a continuance, we note that the grant or denial of a continuance is a matter entrusted to the discretion of the trial court. *State v. Breneman*, 2d Dist. Champaign No. 2010 CA 18, 2012-Ohio-2534, ¶ 15, citing *State v. Goode*, 2d Dist. Montgomery No. 19273, 2003-Ohio-4323, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981).

{¶ 44} As the Supreme Court of Ohio has determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

*AAAA Ents., Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 45} In *Breneman,* this Court noted:

In evaluating a motion for a continuance, a trial court should consider the

following: 1) the length of the delay requested; 2) whether other continuances have been requested or received; 3) the inconvenience to the litigants, witnesses, opposing counsel, and the court; 4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; 5) whether defendant contributed to the circumstances which give rise to the request for a continuance; and 6) other relevant factors, depending on the unique facts of each case. *Unger,* [67 Ohio St.2d 65,] 67-68, 423 N.E.2d 1078.

*Breneman* at ¶ 15.

**{¶ 46}** Goss filed the motions for continuances on the morning scheduled for trial in the 2018 and 2019 cases. The court had scheduled the final resolution conference in each case for January 18, 2019, and it made clear in the scheduling entries that that date was "the plea cut-off date for any negotiated plea." Although defense counsel points out that she was appointed on the 2018 case on December 13, 2018, and on the 2019 case on January 14, 2019, the "plea cut-off date" was contained in the court's docket. Contrary to the court's order, defense counsel argued in her motion that, at the conference on January 18, 2019, she "made it clear that this case would not be proceeding to trial and that plea negotiations had just begun between the State and the defense." Counsel's assertion in the motions for a continuance that the court failed "to file an order memorializing such an important date" is belied by the scheduling entries. While counsel argued that she received a significant amount of discovery, she further asserted that she "never intended to proceed to trial and therefore never prepared for trial." Given that Goss was on notice that "any plea taken after the final resolution conference [would] only

be accepted as charged in the indictment," we see no abuse of discretion in the trial court's denial of the motion to continue the 2018 case on the day of trial. For the same reason, we conclude that Goss was not entitled to waive his speedy trial rights on the day set for trial.

{¶ 47} Moreover, Goss was not entitled to findings of fact and conclusions of law. Crim.R. 12 governs in part motions before trial, and section (F) provides that, where "factual issues are involved in determining a motion, the court shall state its essential findings on the record." The court denied the motion to continue the 2018 case (thereby denying the State's motion for joinder), because the request was based upon the parties' ongoing plea negotiations in violation of the court's rule.

{¶ 48} Regarding the trial court refusal to allow Goss to substitute counsel, we note:

> Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include "the timeliness of the motion and whether there was a conflict between the attorney and the client that was so great that it resulted in a total lack of communication preventing an adequate defense." *State v. Jones*, 91 Ohio St.3d 335, 342, 2001-Ohio-57, 744 N.E.2d 1163, quoting *U.S. v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996). "In addition, courts should 'balanc[e] * * * the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.' " *Id.* at 342-343. The decision of whether to grant a defendant's motion for substitution of counsel is confided to the sound discretion of the trial court. *Wheat* [*v. United States*], 486 U.S. at 164, 108

S.Ct. at 1700, 100 L.Ed.2d at 152.

*Breneman,* 2d Dist. Champaign No. 2010 CA 18, 2012-Ohio-2534, at ¶ 14.

{¶ 49} Goss's pro se motion to replace counsel was filed on the day of trial while Goss was represented by counsel. Goss asserted that he did not want to proceed to trial, and defense counsel indicated that Goss intended to enter his pleas. The transcript of the proceedings does not reflect a conflict so great that it resulted in a total lack of communication between Goss and defense counsel. Counsel for Goss represented to the court that she had reviewed the discovery with Goss and answered his questions. After a recess to allow Goss to "share" with defense counsel information that he felt she needed to know that he had not yet told her, Goss represented to the court that he had done so and that defense counsel had answered his questions. Based upon the foregoing, we cannot conclude that the trial court abused its discretion in denying Goss's pro se motion to substitute counsel.

{¶ 50} Regarding Goss's assertion that the trial court abused its discretion in setting a plea cut-off date of January 18, 2019, we note that the court so advised the parties by written entries on December 7, 2018, and January 11, 2019, in emphasized text. In *State v. Botts*, 2d Dist. Greene No. 2018 CA 41, 2019-Ohio-3801, this Court concluded that the trial court's pretrial order, which stated, " '[a]bsent any extenuating circumstances, any plea taken after the final pretrial will only be accepted as charged in the indictment,' * * * reflects a general as opposed to an absolute policy that allows the trial court to determine whether the circumstances justify a deviation from the policy." *Id.* at ¶ 11. This Court concluded that it was reasonable for the trial court to have a general policy against the acceptance of a negotiated guilty plea on the date of a scheduled trial.

*Id.* We cannot conclude that the trial court abused its discretion in determining that the circumstances herein did not justify a deviation from the general rule; the parties were on notice regarding the rule, and defense counsel sought a continuance on the date set for trial "only so that Defendant can accept the State's plea offer." Significantly, defense counsel did not argue or suggest that the second indictment played a critical role in the continued negotiations and/or any purported trial preparation.

{¶ 51} We next address Goss's arguments that his plea was not knowing, intelligent and voluntary.

{¶ 52} Crim.R. 11 provides in relevant part as follows:

(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the

defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 53} This Court recently noted:

In order to be constitutionally valid and comport with due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *State v. Bateman*, 2d Dist. Champaign No. 2010CA15, 2011-Ohio-5808, ¶ 5, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "In order for a plea to be knowing, intelligent, and voluntary, the trial court must comply with Crim.R. 11(C)." (Citation omitted.) *State v. Russell*, 2d Dist. Clark No. 10-CA-54, 2011-Ohio-1738, ¶ 6.

"Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "The court must make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require and must notify the defendant of the constitutional rights that Crim.R. 11(C)(2)(c) identifies." *State v. Bishop*, [156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766,] ¶ 11, citing *Veney* at ¶ 13.

"While the court must strictly comply with the [constitutional] requirements listed in Crim.R. 11(C)(2)(c), the court need only substantially comply with the [non-constitutional] requirements listed in Crim.R. 11(C)(2)(a) and (b)." *Id.*, citing *Veney* at ¶ 18. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is

waiving." (Citations omitted.) *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

"Crim.R. 11 provides that, before accepting a guilty plea, a court must '[d]etermin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved[.]' " *State v. Jones*, 2d Dist. Montgomery No. 24772, 2013-Ohio-119, ¶ 6. "The 'maximum penalty' includes any mandatory post-release control sanction[.]" *Id.* at ¶ 7.

*State v. Jones*, 2d Dist. Clark No. 2018-CA-63, 2019-Ohio-303, ¶ 8-11.

**{¶ 54}** As this Court has further noted:

In *State v. Bird*, 81 Ohio St.3d 582, 584, 1998-Ohio-606, the Ohio Supreme Court stated that [on a no contest plea,] "the trial court is required to find the defendant guilty of the charged offense if the indictment alleges sufficient facts to state a felony offense, i.e., if the indictment is sufficient to state an offense." *State v. Landgraf*, Montgomery App. No. 21141, 2006-Ohio-838. The requirements regarding no contest pleas in misdemeanor cases are different than the rules in felony cases. Pursuant to R.C. § 2937.06(A)(1), in misdemeanor cases, the trial court is required to hear an explanation of the circumstances surrounding the offense and then determine whether the facts are sufficient to convict on a misdemeanor offense following a no contest plea. In a felony case, however, Crim.R. 11 permits a plea of no contest to a criminal charge, and does not require an explanation of the circumstances. Instead, the rule permits the court to

enter judgment only based upon the facts as alleged in the indictment.

*State v. Adams*, 2d Dist. Montgomery No. 22493, 2009-Ohio-2056, ¶ 14.

{¶ 55} We initially note that Goss's characterization of the "atmosphere of intimidation, pressure, and a lack of fundamental fairness" is belied by the record. Defense counsel represented to the court that Goss "never wanted to go to trial," that he understood that his plea needed to be "voluntarily made, intelligently made," and that she had discussed that with him "in detail." When Goss asserted that he did not "feel like [he] should have to take, push a No Contest Open plea for this case at this point," the court advised him, "you don't have to plead. * * * We can have a trial." When Goss advised the court that he "could sign a speedy trial waiver," the court indicated that "we're beyond that today."

{¶ 56} Goss advised the court that he and defense counsel had discussed the nature of the charges against him and that he understood them. In the course of the exchange regarding the facts underlying the charges, Goss indicated that, having reviewed the evidence against him, he felt comfortable entering his no contest pleas. Defense counsel represented to the court that she had gone over all the discovery that she had received from the State with Goss and had answered all of his questions. Goss advised the court, after a recess, that he had provided all of the information to defense counsel so that she could properly represent him, and that she had answered all of his questions. Goss indicated that he was not under the impression that he had no choice but to enter his pleas, and he indicated, "[n]obody's rushed me." When asked if the felt "pressured, coerced, compelled, manipulated, or frightened in making his decision" to plead no contest, Goss responded, "No."

{¶ 57} The transcript reflects that the court advised Goss of each of the constitutional rights he waived by entering his plea, and Goss indicated his understanding thereof.

{¶ 58} Finally, in accepting Goss's plea, the court indicated that, based on its review of the bill of particulars in this case and the indictments, it found Goss guilty as to each count beyond a reasonable doubt.

{¶ 59} Goss correctly points out, however, that the trial court advised him at the plea hearing that, in the 2019 case, it would "impose monitored time, which basically results in no consequence to you in effect," and that Goss would "not be serving a prison sentence in [the 2019 case] * * * and I'll just commit to that right now; all right?" Goss responded, "I understand that." The State acknowledges that the trial court sentenced Goss in the 2019 case to 12 months each on Counts 2 and 3, but it notes that Goss "failed to raise this sentencing error before the trial court." According to the State, Goss cannot show plain error "unless the record indicates that his sentence would clearly have been different but for the error."

{¶ 60} As this Court has noted,

> * * * "Ordinarily, a failure to bring an error to the attention of the trial court at a time when the court could correct that error constitutes a waiver of all but plain error." *State v. Johnson*, 164 Ohio App.3d 792, 2005-Ohio-6826, 844 N.E.2d 372, ¶ 22 (2d Dist.), citing *State v. Wickline*, 50 Ohio St.3d 114, 120, 552 N.E.2d 913 (1990). Plain error does not exist unless the record indicates that [a defendant's] sentence would clearly have been different but for the error. *Id.* at ¶ 23, citing *State v. Long*, 53 Ohio St.2d 91,

97, 372 N.E.2d 804 (1987). (Other citation omitted.)

We have previously held that "[i]f the trial court accepts a plea agreement on the record, it must honor it. If the trial court imposes anything other than the agreed-upon sentence, the sentence is rendered void or voidable." (Citation omitted.) *State v. Arde,* 190 Ohio App.3d 196, 2010-Ohio-5274, 941 N.E.2d 119, ¶ 18 (2d Dist.). This is the case because " '[w]hen the trial court promises a certain sentence, the promise becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary.' " *State v. Layman,* 2d Dist. Montgomery No. 22307, 2008-Ohio-759, ¶ 15, quoting *State v. Bonnell*, 12th Dist. Clermont No. CA2001-12-094, 2002-Ohio-5882, ¶ 18. (Other citation omitted.) " 'Accordingly, a trial court commits reversible error when it participates in plea negotiations but fails to impose the promised sentence.' " *Id.*

"On remand for a breach of a plea agreement, two remedies are available, depending on the circumstances of the case. * * * Either the trial court must sentence appellant in accordance with the plea agreement, or if it determines such a sentence is no longer appropriate, it must allow appellant the opportunity to withdraw his guilty plea." (Citations omitted.) *Bonnell* at ¶ 23.

*State v. Anderson*, 2d Dist. Montgomery No. 26056, 2014-Ohio-4699, ¶ 8-10.

**{¶ 61}** Based upon the foregoing, we conclude that the trial court committed plain error in promising Goss that he would not be sentenced to prison in the 2019 case and then imposing a sentence in that case. Goss's sentence in the 2019 case (Greene C.P.

No. 2019-CR-2) is reversed, and the matter is remanded to the trial court for the limited purpose of imposing monitored time for the offenses of which he was found guilty in that case. In all other respects, the judgment of the trial court in Case No. 2019-CR-2 is affirmed. The judgment in the 2018 case (Greene C.P. No. 2018-CR-939) is also affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J., concurs.

FROELICH, J., concurs:

{¶ 62} I agree with the majority opinion but write separately to address the trial court's decision to deny a continuance.

{¶ 63} Under the facts before us, the *Breneman* factors weighed in favor of granting a continuance:

1. The length of the delay requested is unclear, but would have been short given the stage of the plea negotiations;

2. No other continuances of the trial had been requested on the record;

3. There was minimal inconvenience and no prejudice to the litigants, witnesses, counsel, or the court;

4. The requested continuances were apparently the result of, at worst, defense counsel's lack of awareness of the court's plea policy, which was included in the scheduling entries filed in each case before counsel was appointed;

5. The defendant, perhaps as opposed to counsel, did not give rise to the request for a continuance;

6. Both defense counsel and the defendant indicated they were not ready to go

to trial, and the prosecutor agreed to the continuance for the purpose of continued plea negotiations.

{¶ 64} On the surface, it appears that Goss was faced with a Hobson's choice of pleading no contest to all counts as charged or immediately going to trial with an unprepared attorney that he requested be removed. At the beginning of the plea colloquy, Goss and the court had the following exchange:

DEFENDANT KENNETH GOSS: I feel like we've ran out of time. It's not my fault. It's – I don't want to blame, but it's my Counsel's fault we've ran out of time, and I just don't – I don't feel like I should have to take, push a No Contest Open Plea for this case at this point I feel like –

THE COURT: Well, you don't have to plead. We have a Jury out here. We can have a trial.

DEFENDANT KENNETH GOSS: I don't feel like I should have to go to Jury trial. I feel like I need more – I feel like I should have more time. * * *

(Plea Tr. at 17-18.) The court noted that Goss's speedy trial time was "coming to a close," to which Goss offered to waive his speedy trial rights. The court responded that "we're beyond that today. We have a Jury out here waiting to try this case or we're going to do a plea." (Plea Tr. at 19.) Goss replied: "Well, I guess we'll take a plea. I don't want to go to Jury trial. I'm facing quite a bit of time if found guilty --." (Plea Tr. at 19.) Goss subsequently stated during the Crim.R. 11 colloquy that no one had "rushed" him or coerced him to enter his plea (Pleas Tr. at 28), but it arguably could be found that the lack of a continuance resulted in a less than a voluntary plea.

{¶ 65} However, in the unique facts of the case, I would find that the denial of the

requested continuance was harmless. Goss's counsel and the prosecutor explicitly stated that they never intended to go to trial, but wanted more time for plea negotiations. The parties had apparently reached an agreement that the State would *recommend* a four-year sentence (Plea Tr. at 7-9, 16, 45), but such an agreement as to sentencing could not be presented to the court if a plea hearing were held that day. Nevertheless, the trial court made clear that the prosecution was free to request a four-year sentence for Goss to the presentence investigator or at sentencing. There is nothing in the record to suggest that continued plea negotiations would have resulted in an agreed – rather than a recommended -- four-year sentence. Accordingly, the trial court's denial of the continuance did not preclude Goss or the State from presenting the recommended sentence at a later time to which they had agreed. Moreover, even if the trial court had accepted the State's recommendation at the plea hearing, the trial court still would not have been bound by the parties' recommendation.

Copies sent to:

David M. Morrison
Joe Cloud
Hon. Stephen Wolaver